AFFIDAVIT

I, Daniel Merchand, being sworn, depose and state as follows:

1. I am a Detective with the Burlington Police Department, currently assigned to the Narcotics Unit. Next week I will become a Task Force Officer with the United States Drug Enforcement Administration. I have been a police officer for over 13 years. In connection with my duties and responsibilities, I have received extensive training in the field of narcotics investigation, and enforcement. I have also participated in investigations relating to the possession and distribution of controlled substances, including heroin.

2. This affidavit is presented to establish probable cause to believe that DIMOND HARPS of Brooklyn, New York, has knowingly and intentionally possessed with intent to distribute heroin, a schedule I controlled substance within the District of Vermont. Because this affidavit is solely for the purpose of establishing probable cause, it does not contain everything I know regarding this investigation.

3. Prior to the events of yesterday described below, I had spoken with Det. Harvey of the New York City Police Department, 79th Precinct. Det. Harvey told me officers from his Precinct had in July 2012 arrested a male by the name of Dimond HARPS arising out of a drug related robbery that escalated into a shooting. Police believed HARPS fired several shots during this incident, but did not hit anyone or any of his intended targets. HARPS discarded the gun, which law enforcement recovered during a foot pursuit of HARPS. Det. Harvey advised he was involved with questioning HARPS on July 13, 2012, following HARPS' arrest.

4. In addition to speaking with Det. Harvey about this interview, I have also reviewed a report of this interview. During the course of the interview on July 13, 2012, after having been advised of his Miranda rights, HARPS admitted to obtaining 90 "bundles," or 900 bags of heroin approximately twice a week from his source in New York City. HARPS advised he was traveling to Burlington, Vermont approximately twice a week to distribute the heroin. HARPS admitted the bags he had been selling in the Burlington area were marked with the stamps "AMBITION" and "Purple Label." HARPS further advised he goes by the nicknames of "CHAD" or "E" in the Burlington, VT area.

5. During the week of 07/16/12 I was advised by Det. Harvey that the case against Harps was dismissed for an unknown reason and he had since been released from jail in New York City and had no current pending charges.

6. Shortly after HARPS was released, I began receiving information from various sources that HARPS had returned to Vermont and was dealing heroin. During August of 2012 HARPS was observed by this detective during the course of surveillance, interacting with known individuals involved in the use and distribution of heroin.

7. During the week of 08/27/12 I was advised by a confidential informant or "CI" that HARPS was acting in concert with other subjects known to law enforcement in selling heroin in Burlington. It should be noted CI knows HARPS as "CHAD" or "E."

8. On 08/29/12 at approximately 3:40pm, I was advised that the Burlington Police Department was dispatched to the area of the City Market, located on South Winooski Avenue in the City of Burlington, for a report of an African American male, wearing a black shirt and headphones who had pointed a gun at some people. It should be noted BPD Det. LaBarge and I had observed HARPS in the downtown Burlington area approximately an hour and twenty minutes earlier wearing a black t-shirt and black pants. Other Officers and I responded to the vicinity of City Market. BPD Officer Volp observed a male matching the description. Officer Volp advised me that when the male noticed the officer's presence the male made furtive movements, at which time officers instructed the male to keep his hands in view, due to the nature of the report involving the handgun. Officer Volp advised me that he conducted a pat down and discovered a silver .25 caliber Raven handgun concealed in the male's pocket. I observed the gun, and that the gun's magazine contained bullets, though no round was chambered. The male verbally identified himself as Dimond HARPS. HARPS was taken into custody for Disorderly Conduct and transported to the Burlington Police Department. HARPS was also found to be in possession of $1,070.

9. Ofc. Volp also advised me about the following. At the police station, Ofc. Volp advised HARPS that HARPS would be subject to a strip search. Ofc. Volp then observed HARPS grab a paper towel from a dispenser and start wiping his body, in particular the area of the waistband of HARPS' underwear. When Ofc. Volp took HARPS into the department's fingerprinting room, Volp looked in the wastebasket and saw nothing out of the ordinary. After Ofc. Volp took HARP's fingerprints, Ofc. Volp observed HARPS throwing his paper towel into the garbage can. Volp then looked in the garbage can and observed several bundles of what appeared to be heroin. Volp also found a bundle of heroin with identical wrapping as those in the garbage can on the floor between the wall and the fingerprinting machine, located next to the garbage can. The suspect heroin was counted and there were 57 individual bags of suspect heroin. BPD Det. Chenette tested the suspect heroin using a NARK II Mecke's Reagent, which tested positive for the presence of heroin.

10. Based on my training and experience, the above-described quantities of heroin and cash indicate that the heroin was possessed for purposes of re-distribution.

11. I interviewed HARPS and he provided a written and recorded waiver of his Miranda rights. HARPS advised he first came to Vermont in late 2010 or early 2011, and has been coming to Vermont on and off since that time. HARPS advised he had been to Rutland and the Burlington area while in Vermont. HARPS told me that if I had spoken with Det. Harvey, then I already knew what was happening. HARPS would not provide amounts of narcotics he was involved with in distributing. HARPS said the reason he was carrying the gun was for self protection, because he had been stabbed by someone within the past week. HARPS admitted the heroin he discarded was his and claimed he had it for personal use. When I asked him why the charges associated with his recent New York City case (described above) had been dismissed, he explained that it was because he was

not caught personally with the hand gun.

Dated at Burlington, in the District of Vermont, this 30th day of August, 2012.

_____
DANIEL MERCHAND
Detective, Burlington Police Department


Sworn to and subscribed before me this 30th day of August, 2012.

_____
JOHN M. CONROY
United States Magistrate Judge